J-S42045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KRISTI FREDERICKS | : | |
| | : | |
| Appellant | : | No. 3245 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 2, 2019
in the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0002349-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KRISTI FREDERICKS | : | |
| | : | |
| Appellant | : | No. 3246 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 2, 2019
in the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0003155-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KRISTI FREDERICKS | : | |
| | : | |
| Appellant | : | No. 3247 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 2, 2019
in the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0001984-2017

BEFORE: PANELLA, P.J., OLSON, J., and MUSMANNO, J.

J-S42045-20

MEMORANDUM BY MUSMANNO, J.: **FILED DECEMBER 15, 2020**

Kristi Fredericks ("Fredericks") appeals from the judgments of sentence entered following her convictions of five counts of theft by deception; four counts of forgery; three counts of tampering with records; two counts each of unsworn falsifications, theft by failure to make required deposit, attempt to commit theft by deception, and unauthorized practice of law; and one count each of attempt to commit theft by unlawful taking, theft by unlawful taking, and theft by extortion.[1] We affirm in part, vacate the judgment of sentence, and remand for resentencing.

Fredericks was formerly licensed as an attorney in the Commonwealth of Pennsylvania and the State of New Jersey.[2] Fredericks was charged on June 30, 2017, at docket number CP-15-CR-0001984-2017 ("Docket No. 1984-2017"), September 20, 2017, at docket number CP-15-CR-0003155-2017 ("Docket No. 3155-2017"), and July 24, 2018, at docket number CP-15-CR-0002349-2018 ("Docket No. 2349-2018"), after an investigation revealed that she had defrauded several of her clients between October 2013 and June 2016, and engaged in the unauthorized practice of law after she had been

_____

[1] 18 Pa.C.S.A. §§ 3922(a)(1), (2); 4101(a)(2), (3); 4104(a); 4904(b); 3927; 901(a), 3922(a)(1); 2524; 901(a), 3921(a)(1); 3921(a)(1); 3923(a)(4).

[2] By Order of the Supreme Court of Pennsylvania, Fredericks was disbarred from the practice of law in Pennsylvania, effective January 1, 2016.

- 2 -

disbarred in Pennsylvania. The trial court, in its Opinion, summarized the circumstances underlying Fredericks's convictions as follows:

**[Docket No.] 1984-2017**

In or about July of 2014, [Fredericks], then licensed to practice law in Pennsylvania, improperly wrote herself a check on the Susquehanna [Bank] account of the Estate of G. Raymond Elmer [(the "Elmer Estate")], a client of [Fredericks], in the amount of $28,972.50, without the knowledge, permission, or consent of the executor of the [Elmer] Estate. [Fredericks] later deposited the check into one of her own personal bank accounts. In or about February of 2015, [Fredericks] … fabricated a Fee Agreement Letter purportedly addressed to Raymond K. Elmer, the executor of the [Elmer Estate], providing for a 15% attorney fee instead of the 10% which had been previously agreed upon.

In or about November of 2014, [Fredericks] … improperly wrote herself a check of [*sic*] the First Niagara [Bank ("First Niagara")] account of the Estate of Vera Ahern [(the "Ahern Estate")], a client of [Fredericks], in the amount of $9,000, without the knowledge, permission or consent of the executor of the [Ahern Estate]. [Fredericks] subsequently deposited the check she wrote to herself on the [Ahern] Estate account into one of her own personal bank accounts. In or about February of 2015, [Fredericks] … improperly wrote herself a second check on the First Niagara account of the [Ahern Estate], in the amount of $57,000, without the knowledge, permission, or consent of the executor of the [Ahern] Estate. [Fredericks] subsequently deposited the check into one of her own personal bank accounts. Because the First Niagara Estate account had already been closed, [Fredericks] was unable to obtain [] money from the check.

Also in or about February 2015, [Fredericks] … executed a verification, subject to the provisions set forth in 18 Pa.C.S.[A. §] 4904, in which she attested that the facts contained in the document titled "Answer to Petition for Return of Estate Property" ("Answer"), were true and correct to the best of her knowledge, information and belief. The Answer, which was filed of record in the Orphan's Court, contained a statement that [the] executor, Raymond K. Elmer, had prepared an inheritance tax return, a statement that [Fredericks] knew to be false because she herself had prepared and filed the tax return that was grossly inadequate

and erroneous. The Answer, verified by [Fredericks], also had attached to it a copy of the purported Fee Agreement Letter which [Fredericks] had falsified and contained a statement that [Raymond] Elmer had agreed to an attorney fee of 15% when, in reality, [Fredericks] knew that he had only agreed to a 10% attorney fee.

In or about November of 2014, [Fredericks] … received an advanced payment of attorney's fees in the amount of $2,500 from Donald Peszko [("Peszko")], a client of [Fredericks], which, pursuant to a written Fee Agreement Letter, she was required to hold in escrow. Instead of complying with the applicable Fee Agreement, [Fredericks] deposited [] Peszko's money into one of her own personal bank accounts. In or about January of 2015, [Fredericks] … received a second $2,500 payment from [] Peszko, and again failed to properly escrow it as required by the written Fee Agreement Letter. In or about May of 2015, [Fredericks] … sent [] Peszko a fraudulent billing invoice for $5,200 when, in fact, [Fredericks] knew she had not earned the purported billed amount. In or about September 2015, [Fredericks] … altered a written Fee Agreement Letter that had been executed in November of 2014 by [] Peszko, a client, by changing the amount of an attorney fee from $2,500 to $5,000, and by removing the requirement that [] Peszko's money be escrowed, thereby making [] Peszko's advanced payments for attorney's fees non-refundable. In or about September of 2015, [Fredericks] … signed [] Peszko's name and signature on the written Fee Agreement Letter that she had previously altered. [Fredericks] did so without [] Peszko's knowledge, consent or permission. In or about September 2015, [Fredericks], … [while] under investigation by the Office of Disciplinary Counsel of the Disciplinary Board of the Supreme Court of Pennsylvania, submitted to Disciplinary Counsel a copy of the written Fee Agreement with [] Peszko, wherein she had altered and forged [] Peszko's name and signature on the document.

In or about October of 2013, [Fredericks] … obtained $3,000 from Esther Meeks [("Meeks")], a client of [Fredericks], to resolve a subdivision matter for [] Meeks. In order to secure a retainer from [] Meeks, [Fredericks] knowingly misrepresented her qualifications, telling [] Meeks that it was a "simple subdivision" when, in fact, [Fredericks] had no experience handling land use/subdivision matters. In or about May of 2014, [Fredericks] … obtained another $3,000 from [] Meeks by false pretenses. In

doing so, [Fredericks] represented to [] Meeks that the subdivision approval process was progressing along when, in reality, she had not even initiated the process or earned the previous $3,000 that she had received from [] Meeks in October of 2013. In or about March of 2015, [Fredericks] … fabricated a written billing invoice and provided it to [] Meeks in which [Fredericks] claimed to have done subdivision approval work for [] Meeks, which, in fact, she did not actually perform.

## [Docket No.] 3155-2017

In or about August of 2015, [Fredericks] … knowingly submitted a written billing invoice to Margaret Muller [("Muller")], a client of [Fredericks], for $1[,]530.10, which [Fredericks] had not actually earned.

In or about February of 2014, [Fredericks] … secured $4,000 from Frank Balistrieri [("Balistrieri")], a client of [Fredericks], on the representation that the $5,000 retainer that [] Balistrieri had paid her in [*sic*] December 13, 2013, to handle a property damage claim, needed to be replenished when, in fact, she had not earned the initial $5,000 retainer. In or about July of 2015, [Fredericks] … improperly obtained from [] Balistrieri an additional $5,000 to arbitrate his property damage claim when, in fact, the two year statute of limitations had run and [Fredericks] had no intention of earning the additional $5,000.

In or about August of 2015, [Fredericks] … obtained $5,000 from Danielle and Eric Behrenhauser [(the "Behrenhausers")], clients of [Fredericks], on her representation that she would handle a personal injury claim for them when, in fact, [Fredericks] had no intention of earning the money.

In or about June of 2016, [Fredericks] … unlawfully induced William Moser [("Moser")], a former Social Security Disability [("SSD")] client of [Fredericks], to give her $6,000 by threatening to have his [SSD] benefit payments stopped unless he paid her the money.

## [Docket No.] 2349-2018

In or about June of 2016, [after her disbarment in Pennsylvania,] [Fredericks] … unlawfully held herself out to Administrative Law Judge Susanne Straus [("Judge Straus")], to Craig Smedley [("Smedley")], a[n SSD] client of [Fredericks], and

to [] Smedley's wife, Wendy Smedley [("Mrs. Smedley")], that [Fredericks] was licensed to practice law in Pennsylvania when, in fact, she knew that she was not.

Trial Court Opinion, 2/26/19, at 5-9 (some paragraphs reordered and combined).

After a nine-day trial, a jury convicted Fredericks of the above-mentioned offenses. On August 2, 2019, the trial court sentenced Fredericks to an aggregate term of 137 months to 420 months in prison, plus two years of probation, and ordered Fredericks to pay restitution, to not contact the victims, and to provide a DNA sample. Fredericks filed timely post-sentence Motions seeking a new trial, and a separate Motion for reconsideration of her sentence. The trial court denied Fredericks's Motion for reconsideration, and scheduled argument for her remaining post-sentence Motions. Notably, the argument was scheduled beyond the 120-day period in which the trial court could rule on the post-sentence Motions. *See* Pa.R.Crim.P. 720(B)(3)(a).

On October 16, 2019, Fredericks filed a Motion seeking to vacate the Order denying her Motion for reconsideration, and to extend the time period for deciding the merits of her post-sentence Motions. The trial court did not rule on Fredericks's Motions. Prior to the scheduled argument on Fredericks's Motions, Fredericks filed timely Notices of Appeal at each docket number, and separate, but identical, court-ordered Pa.R.A.P. 1925(b) Concise

Statements.[3, 4]  On April 2, 2020, this Court issued an Order, upon Application by Fredericks, consolidating Fredericks's appeals filed at the three docket numbers.

Fredericks raises the following issues for our review:

A. Did the [trial] court abuse its discretion in sentencing a first-time, non-violent offender to a term of up to 36 years in prison?

B. Was the evidence sufficient to prove that [] Fredericks engaged in the unauthorized practice of law at a [SSD] hearing where federal law governs qualifications to represent litigants at such hearings[,] and [] Fredericks was qualified to represent her client under that federal provision?

C. Did the [trial] court err by failing to impose an alternative minimum sentence under the [Recidivism Risk Reduction Initiative ("]RRRI[")[5]] program where [] Fredericks clearly qualified under that program?

Brief for Appellant at 3 (footnote added).

_____

[3] We note that the trial court filed two Pa.R.A.P. 1925(a) Opinions:  the first, on February 26, 2020, addressed Fredericks's first and third issues presently on appeal, and the second, supplemental Opinion on March 19, 2020, which addressed her second issue on appeal.

[4] After Fredericks filed her Notices of Appeal, this Court ordered Fredericks to show cause why her appeals should not be quashed as interlocutory, as, though the trial court denied her Motion for reconsideration, it had not yet ruled on her post-sentence Motions.  Fredericks submitted a Response, indicating that she had filed her Notices of Appeal in order to preserve her claims, as the trial court's scheduled argument on her Motions fell outside the 120-day statutory period, and the trial court had not ruled on her Motion to extend such time period.  We acknowledge that the denial of Fredericks's Motions by operation of law did not occur until after she filed her Notices of Appeal.  However, in the interest of judicial economy, we will address her appeal as though it were filed after the trial court's denial of her Motions by operation of law.

[5] 61 Pa.C.S.A. §§ 4501-4512.

In Fredericks's first issue, she presents four distinct challenges regarding her sentence. *Id.* at 21-23. Fredericks argues that the trial court (1) imposed an excessive aggregate sentence in light of her criminal conduct; (2) failed to consider Fredericks's rehabilitative needs; (3) improperly focused on Fredericks's lack of acceptance of responsibility for her crimes; and (4) erred in imposing its sentence on two of her theft by deception convictions, as she was not provided with notice of the invocation of a mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9717. Brief for Appellant at 21-23.

We will address Fredericks's challenge to imposition of her sentence pursuant to section 9717 first. Fredericks argues that the trial court's imposition of sentence pursuant to section 9717 for two of her convictions of theft by deception—counts 28 and 31, both related to the Meeks subdivision matter—were improper, as Fredericks had not been provided reasonable notice. *Id.* at 33.

Section 9717 states, in relevant part, the following:

**(a) Mandatory sentence.**--A person under 60 years of age convicted of the following offenses when the victim is over 60 years of age and not a police officer shall be sentenced to a mandatory term of imprisonment as follows:

\* \* \*

18 Pa.C.S.[A.] § 3922 (relating to theft by deception)--not less than 12 months, but the imposition of the minimum sentence shall be discretionary with the court where the court finds justifiable cause and that finding is written in the opinion.

42 Pa.C.S.A. § 9717(a). This Court has explained that a defendant must be afforded notice prior to the imposition of the mandatory minimum sentence under section 9717:

> The only requirement [to satisfy the notice requirements to the imposition of a mandatory minimum sentence] is that the defendant receive reasonable notice of the Commonwealth's intention to invoke [s]ection 9717 after conviction and before sentencing. … What is reasonable must necessarily depend upon the nature, purpose, and circumstances of each case. To be adequate, notice must be sufficient to permit an objection or a defense.

*Commonwealth v. Rizzo*, 523 A.2d 809, 811 (Pa. Super. 1987).

Here, in imposing its sentence, the trial court stated that its sentences for two of Fredericks's theft by deception convictions were made pursuant to "the enhancement [] under [section] 9717(a) [of] Title 42." N.T., 8/2/19, at 49. Further, the record does not reveal any indication that Fredericks was notified of the potential invocation of section 9717.[6] *See* N.T., 8/2/19, at 31-32 (wherein Fredericks's counsel states that he was not prepared to address the mandatory minimum sentence dictates in section 9717, as it was not

---

[6] We note that the trial court and the Commonwealth both concede that such notice never occurred, and are in agreement that the appropriate remedy is to vacate the judgment of sentence, as to the two counts, and to remand for resentencing. *See* Trial Court Opinion, 2/26/20, at 13-14; Commonwealth's Brief at 18-19.

referenced in the Commonwealth's sentencing memorandum).[7]

Accordingly, because Fredericks did not receive proper notice of the invocation of the mandatory minimum provisions in section 9717, the trial court erred in sentencing Fredericks in accordance with section 9717, and her judgment of sentence as related to those two counts must be vacated. Additionally, because the vacation of Fredericks's judgment of sentence for counts 28 and 31 disrupts the trial court's sentencing scheme, as the two counts were run consecutive to each other and to other counts, we must vacate the judgment of sentence in its entirety. **See Commonwealth v. Baney**, 187 A.3d 1020, 1023 (Pa. Super. 2018) (stating that "if a trial court errs in its sentence on one count in a multi-count case, then all sentences for all counts will be vacated so that the [trial] court can restructure its entire sentencing scheme.") (citation omitted). As a result of the foregoing, we vacate Fredericks's judgment of sentence, and remand to the trial court for resentencing.

We will address Fredericks's remaining discretionary challenges together. First, Fredericks argues that sentencing a "non-violent, 43-year-old mother of two children[,] whose prior record consists of a petty offense[,] will

---

[7] We further observe that the Commonwealth did not seek to invoke section 9717, either in its sentencing memorandum or during the sentencing hearing. Rather, the trial court decided to impose sentences under section 9717 for counts 28 and 31, because Meeks was over the age of 60. Nevertheless, Fredericks did not receive notice adequate to permit an objection. **See Rizzo**, **supra**.

spend up to 36 years in prison" constitutes an abuse of discretion. Brief for Appellant at 24. Fredericks claims that the trial court's decision to impose two sentences above the aggravated range, eight sentences at the top of the aggravated range, and seven sentences at the top of the standard range, with eighteen of her twenty-three convictions being imposed consecutively, was manifestly excessive. *Id.* at 26. Further, Fredericks points to the letters and testimony submitted by the victims, wherein she characterizes their remarks about the stress that Fredericks's conduct caused them, rather than financial or emotional ruin, as indicative that she should have received a lesser sentence. *Id.* at 27. Second, Fredericks claims that the trial court failed to properly consider her rehabilitative needs, and instead "myopically focused on the seriousness of her crimes and her fiduciary duty." *Id.* at 28-30. Third, Fredericks, citing this Court's decision in ***Commonwealth v. Bowen***, 975 A.2d 1120, 1126 (Pa. Super. 2009), argues that the trial court's focus on her lack of acceptance of responsibility for her crimes violated her Fifth Amendment right against self-incrimination. Brief for Appellant at 30. Fredericks claims that she did, in fact, accept responsibility for her crimes during sentencing, and that the trial court refused to accept her acceptance unless "she uttered [] magic words." *Id.* at 33.

Fredericks's remaining claims challenge the discretionary aspects of her sentence, from which there is no automatic right to appeal.[8]  ***See Commonwealth v. Sunealitis***, 153 A.3d 414, 420 (Pa. Super. 2016).

> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely [filed]; (2) whether [a]ppellant preserved h[er] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code…. [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. DiSalvo***, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted).

Here, Fredericks filed timely Notices of Appeal and preserved her claims in her post-sentence Motions for reconsideration of sentence.  Further, Fredericks has included in her appellate brief a separate Pa.R.A.P. 2119(f) Statement.  **See** Brief for Appellant at 21-23.  Further, Fredericks has raised a substantial question in each of her remaining claims.  ***See Commonwealth v. Moury***, 992 A.2d 162, 171-72 (Pa. Super. 2010) (stating that a substantial question is raised where the "aggregate sentence is unduly harsh, considering

_____

[8] We note that our ultimate disposition necessitates that Fredericks's entire judgment of sentence be vacated, and the matter be remanded to the trial court for resentencing.  However, we will still address Fredericks's challenges to the discretionary aspects of sentencing for the trial court's consideration at resentencing.

the nature of the crimes and length of punishment."); *Commonwealth v. Malovich*, 903 A.2d 1247, 1253 (Pa. Super. 2006) (stating that an appellant's claim that the trial court failed to provide meaningful consideration to the character of the offender raises a substantial question); *Bowen*, 975 A.2d at 1122 (stating that an appellant's claim that the trial court factored a defendant's lack of acceptance of responsibility into her sentence may raise a substantial question). Accordingly, we will address the merits of Fredericks's claims.

We begin with our well-settled standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted). "When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Ventura*, 975 A.2d 1128, 1134 (Pa. Super. 2009). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009).

- 13 -

A trial court's sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Pursuant to 42 Pa.C.S.A. § 9781(c), we can vacate and remand only if we find that: (1) the trial court intended to sentence within the guidelines, but "applied the guidelines erroneously;" (2) a sentence was imposed within the guidelines, "but the case involves circumstances where the applications of the guidelines would be clearly unreasonable;" or (3) "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c).

"In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Commonwealth v. Mouzon*, 812 A.2d 617, 620-21 (Pa. 2002); 42 Pa.C.S.A. § 9721(b). Although the sentencing court is required to explain on the record its reasons for imposing sentence, it "need not specifically cite or include the language of the sentencing code, it must only demonstrate that the court has considered the factors specified in the code." *Commonwealth v. Baker*, 507 A.2d 872, 874 (Pa. Super. 1986) (internal citation omitted). Finally, in imposing a sentence, "the trial [court] may … determine whether, given the facts of a particular case, a sentence should run

consecutive to, or concurrent with, another sentence being imposed."

***Commonwealth v. Hill***, 66 A.3d 365, 370 (Pa. Super. 2013).

The trial court, at sentencing, placed on the record its reasons for imposing its sentence:

> Not only have you committed the crimes that are often in front of me on thefts and unlawful takings, and thefts by deception and attempts to do so, thefts by extortion and forgeries, but those crimes were committed against individuals that you have a fiduciary duty to. So it is not just the run-of-the-mill theft, if there is such a thing, and therefore, I believe that on every one of those crimes which I sentence you to, although some of them may not be in the aggravated range, I believe that the breach of fiduciary duty enhances all of these crimes and would drive them all into the aggravated range.

> * * *

> And, lastly, you have heard victims come up here and not only express the impact that it had on them financially and emotionally, but the impact that it had on their perception of the justice system and of the legal system. So considering all that has been said, because independent of what has occurred with them in the conjunction of your representation of them, you have also engaged in conduct that was intended to defraud the system. And that's the system that you were an officer of the [c]ourt before.

> * * *

> I [sentence you consecutively] because I cannot distinguish between not imposing sentences for each of the victims running them concurrent. Each of your actions with regard to them violated your fiduciary duties to them, as well as the underlying thefts and forgeries. They are entitled to, and I cannot separate them from each other, as to their own individual sentence. Otherwise it would depreciate in their minds, as well as the [c]ourt's, the importance of their rights being violated. It would also send, what I believe, a terrible message to a victim who has been victimized by you, through the exercise of a breach of fiduciary duty. And there must be a deterrent [e]ffect, that no one in your position would do this to somebody else to which they

- 15 -

owe a fiduciary obligation. And there must be a message sent that the system will not allow it to be perverted by someone who has an obligation as an officer of the [c]ourt to this system. Not only to this system, but to your clients.

N.T., 8/2/19, at 45-47, 49-50 (some paragraphs combined).

The record reflects that the trial court thoroughly explained its reasons for imposing Fredericks's sentence. *See Mouzon*, *supra*. Additionally, despite Fredericks's contention that the trial court only considered the seriousness of her crimes in crafting its sentence, the trial court specifically stated that it had "presided over the trial[,] heard all the testimony[,] read diligently both the Commonwealth's sentencing memorandum and [Fredericks's,] listened to all of the evidence presented in this sentencing[, and] listened to [Fredericks's] statements." N.T., 8/2/19, at 45. While the trial court did not specifically reference Fredericks's rehabilitative needs in its sentence, it stated that it had read Fredericks's sentencing memorandum, which detailed Fredericks's background, mitigating circumstances, and rehabilitative needs. *See* Defendant's Sentencing Memorandum, 6/26/19, at 1-8; N.T., 8/2/19, at 45 (wherein the trial court states that it had reviewed Fredericks's sentencing memorandum). Given the circumstances of the offense and the many victims, the characteristics of Fredericks, the sentencing court's observations, and the guideline ranges, the aggregate sentence of 137 to 420 months was not excessive, nor did it constitute an abuse of discretion. *See Shugars*, *supra*; *Baker*, *supra*.

Further, regarding Fredericks's assertion that the trial court improperly focused on her lack of remorse, her reliance on **Bowen** is misplaced. In **Bowen**, the defendant invoked his constitutional right not to testify during his jury trial, and maintained his silence at sentencing. The trial court, in imposing a sentence in the aggravated range, cited multiple factors, including that "[the defendant] failed to show any remorse for his crime or to take responsibility for them, even after the jury's decision." **Bowen**, 975 A.2d at 1121-22. On appeal, Bowen argued that the trial court violated his Fifth Amendment rights by considering his silence as indicative of a lack of remorse. This Court determined that "[i]t is undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs. **Id.** at 1125 (citation omitted). It determined that "a court may not consider a defendant's silence at sentencing as indicative of his failure to take responsibility for the crimes of which he was convicted." **Id.** at 1121.

Here, **Bowen** is distinguishable from the instant matter, as Fredericks did not invoke her right to remain silent at her sentencing hearing. **See** N.T., 8/2/19, at 39-45 (wherein Fredericks testified at sentencing). Further, our review of the sentencing hearing discloses that the trial court did not abuse its discretion when imposing Fredericks's sentences. Rather, the trial court properly considered her lack of acceptance of responsibility as one factor when

imposing a sentence that was consistent with the protection of the public, took into account the gravity of the offense as it related to the impact on the lives of the victims and on the community, and considered Fredericks's rehabilitative needs pursuant to section 9721(b). ***See Bowen***, 975 A.2d at 1125; ***see also*** N.T., 8/2/19, at 45-47. Therefore, Fredericks is not entitled to relief on this claim.

In her second issue, Fredericks argues that the evidence was insufficient to support her convictions for the unauthorized practice of law. Brief for Appellant at 37. Fredericks argues that although she was disbarred from the practice of law in the Commonwealth of Pennsylvania at the time of Smedley's SSD hearings, she remained a licensed attorney in the state of New Jersey. ***Id.*** Fredericks disputes her convictions on the grounds that her representation of Smedley was arguably legal pursuant to 42 U.S.C. § 406(a)(1), the federal statute which governs SSD proceedings. Brief for Appellant at 37. According to Fredericks, she never received "due notice" under that statute revoking her ability to represent clients in such proceedings. ***Id.*** at 37-38. Fredericks points to testimony from her trial, wherein the Commonwealth and the trial court were unsure of whether her representation of Smedley was legal under federal law. ***Id.*** at 40-41. Accordingly, based on the ambiguity surrounding the federal legality of her representation of Smedley, Fredericks claims that the evidence was also

insufficient to support her conviction of unauthorized practice of law as to the SSD proceedings. *Id.* at 41.

A challenge to the sufficiency of the evidence presents a question of law; our standard of review is *de novo*, and our scope of review is plenary. ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1076 (Pa. 2017). When analyzing whether sufficient evidence existed to support a conviction, we must "view the evidence in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the jury could have found every element of the crime beyond a reasonable doubt." ***Commonwealth v. Thomas***, 215 A.3d 36, 40 (Pa. 2019). "The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Commonwealth v. Brown***, 52 A.3d 320, 323 (Pa. Super. 2012). "[T]he uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." ***Commonwealth v. Johnson***, 180 A.3d 474, 482 (Pa. Super. 2018). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Vargas***, 108 A.3d 858, 867 (Pa. Super. 2014) (*en banc*). Additionally, we may not "re-weigh the evidence and substitute our judgment for that of the fact-finder." ***Id.***

The unauthorized practice of law is governed by 42 Pa.C.S.A. § 2524 which states, in relevant part, as follows:

**General rule.**-- … [A]ny person, including, but not limited to, a paralegal or legal assistant, who within this Commonwealth shall practice law, or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor, or the equivalent in any language, in such a manner as to convey the impression that he is a practitioner of the law of any jurisdiction, without being an attorney at law or a corporation complying with 15 Pa.C.S. Ch. 29 (relating to professional corporations), commits a misdemeanor of the third degree upon a first violation. A second or subsequent violation of this subsection constitutes a misdemeanor of the first degree.

42 Pa.C.S.A. § 2524(a). "Accordingly, one who is not an attorney yet practices law violates this provision." *Commonwealth v. Pilchesky*, 151 A.3d 1094, 1100 (Pa. Super. 2016) (citation omitted).

Our Supreme Court has explained the purpose underlying the prohibition against the unauthorized practice of law as follows:

The Pennsylvania Constitution vests with our [Supreme] Court the exclusive authority to regulate the practice of law, which includes the power to define what constitutes the practice of law. Pa. Const. Art. V, § 10(c); *Dauphin County Bar Ass'n v. Mazzacaro,* … 351 A.2d 229, 233 ([Pa. ]1976). What constitutes the practice of law, however, is not capable of a comprehensive definition. For this reason, our Court has not attempted to provide an all-encompassing statement of what activities comprise the practice of law. *Office of Disciplinary Counsel v. Marcone*, … 855 A.2d 654, 660 ([Pa. ]2004); *Shortz et al. v. Farrell*, … 193 A. 20, 21 ([Pa. ]1937). Thus, we have determined what constitutes the practice of law on a case-by-case basis.

*Harkness v. Unemployment Comp. Bd. of Review*, 920 A.2d 162, 166-67 (Pa. 2007) (footnotes omitted).

- 20 -

In this case, Mrs. Smedley testified that she and Smedley retained Fredericks in late 2014 to represent Smedley in his SSD hearings. N.T., 5/6/19, at 15-17. Fredericks was disbarred from the practice of law in the Commonwealth of Pennsylvania effective January 1, 2016. *See* N.T., 5/7/19, at 122 (wherein Fredericks testified that she had been disbarred by Order of the Supreme Court of Pennsylvania in December 2015); *see also* Commonwealth's Exhibit 61A (Disbarment Order). Mrs. Smedley testified that she and Smedley received sporadic contact with Fredericks's office prior to their scheduled SSD hearing on June 9, 2016. N.T., 5/6/19, at 18-24. The hearing was rescheduled for July 26, 2016, where Fredericks appeared and represented Smedley at the hearing. *Id.* at 29-30; *see also* Commonwealth's Exhibit 92I (SSD Hearing Transcript) (wherein Fredericks does not inform the hearing judge or the Smedleys of any change to her licensure, and performs a direct examination of Smedley). Mrs. Smedley testified that she had not been informed, prior to the hearings, that Fredericks had been disbarred in Pennsylvania. *Id.* at 29-30.

Accordingly, the Commonwealth presented sufficient evidence that Fredericks engaged in the unauthorized practice of law with regard to

Smedley's SSD proceedings.[9]  *See Pichelsky*, *supra*.

In her third claim, Fredericks argues that the trial court abused its discretion by failing to impose an RRRI minimum sentence, when calculating Fredericks's sentence.  Brief for Appellant at 41.  Fredericks claims that she was eligible for the RRRI program based on her criminal history, which contained one prior conviction for retail theft.  *Id.* at 42-43.  Further, according to Fredericks, her instant convictions do not cause her to fall outside of the RRRI's "eligible offender" definition.  *Id.*  Accordingly, Fredericks claims, the trial court erred in imposing a non-RRRI sentence, and we should remand the matter for resentencing in accordance with the provisions of the RRRI program.  *Id.* at 43.

Fredericks's "challenge relative to the failure to apply a RRRI minimum [is] a non-waivable illegal sentencing claim." *Commonwealth v. Tobin*, 89 A.3d 663, 670 (Pa. Super. 2014) (citation omitted).  We have repeatedly held that "where the trial court fails to make a statutorily required determination regarding a defendant's eligibility for an RRRI minimum sentence as required, the sentence is illegal." *Commonwealth v. Robinson*, 7 A.3d 868, 871 (Pa. Super. 2010).  "Issues relating to the legality of a sentence are questions of

---

[9] As the trial court astutely noted, "[t]o permit another jurisdiction, whether it be Federal or State, to allow an individual, who was previously disbarred from the practice of law in Pennsylvania, to practice law in Pennsylvania, under the cloak of legitimacy established by some other system outside of Pennsylvania would lead to an absurd result."  Trial Court Opinion, 3/19/20, at 5-6.

law." **Commonwealth v. Wolfe**, 106 A.3d 800, 802 (Pa. Super. 2014) (citation omitted). "Our standard of review over such questions is *de novo* and our scope of review is plenary." **Id.**

Section 9756(b.1) of the Sentencing Code provides that a trial court imposing sentence "shall determine if the defendant is eligible for a recidivism risk reduction incentive minimum sentence under 61 Pa.C.S. Ch. 45." **Commonwealth v. Chester**, 101 A.3d 56, 60 (Pa. 2014) (citation omitted); **see also** 61 Pa.C.S.A. § 4505(a) (providing that "[a]t the time of sentencing, the court shall make a determination whether the defendant is an eligible offender.").

Upon review, the record confirms that the trial court failed to make a determination on the record as to Fredericks's RRRI eligibility. N.T., 8/2/19, at 45-55. Accordingly, Fredericks's sentence is illegal. **See Chester**, **supra**. We must therefore vacate Fredericks's judgment of sentence, and remand the matter for resentencing. Upon remand, the trial court shall make an on-the-record finding as to Fredericks's RRRI eligibility and, if necessary, construct its sentencing in accordance with section 4505(c).[10]

---

[10] We note that the trial court, in its Opinion, conceded that Fredericks was "statutorily eligible to participate in the RRRI program." Trial Court Opinion, 2/26/20, at 13. The Commonwealth, in its appellate brief, agrees that Fredericks qualified as an eligible offender for the RRRI program, and that remand is an appropriate remedy. **See** Commonwealth's Brief at 15-16.

Judgment of sentence affirmed in part, and vacated in part. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2020